**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CJ LOGISTICS AMERICA, LLC d/b/a | ) | CASE NO. |
| DSC LOGISTICS, | ) | |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | |
| | ) | **(JURY DEMAND ENDORSED HEREON)** |
| vs. | ) | |
| | ) | |
| NATIONAL CARRIERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff CJ Logistics America, LLC d/b/a DSC Logistics ("DSC Logistics"), by and through the undersigned counsel, brings this Complaint against Defendant National Carriers, Inc. ("Defendant") (DSC Logistics and Defendant are sometimes collectively referred to hereinafter as the "Parties"). In support of the Complaint, DSC Logistics states the following:

## PARTIES

1. DSC Logistics is an Illinois limited liability corporation with its principal place of business located at 1750 S. Wolf Road, Des Plaines, Illinois 60018. DSC Logistics is a logistics company and freight broker that provides third-party logistics services to its customers, including arranging and managing the transportation of goods for its clients.

2. Defendant is a for-hire motor carrier of property, located at 1501 E. 8th St., Liberal, Kansas 67901, operates in interstate commerce, and is subject to the jurisdiction of and pursuant to a registration issued by the United States Department of Transportation, Federal Motor Carrier Safety Administration under MC 139495.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action because DSC Logistics' claims arise under federal law, and the transportation of the property at issue

constitutes transportation in interstate commerce under 49 U.S.C. § 13102(14), (23) and 49 U.S.C. § 13501(1).  More specifically, this case is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (the "Carmack Amendment"), because it concerns goods damaged by a motor carrier during the interstate transportation of the goods.  Further, because this action is governed by 49 U.S.C. § 14706, and the matter in controversy for the applicable receipt or bill of lading exceeds $10,000.00, exclusive of interest and costs, this Court has original subject matter jurisdiction over the claims under 28 U.S.C. § 1337(a).  The Court also possesses supplemental subject matter jurisdiction over the Second Claim for Relief pursuant to 28 U.S.C. § 1367(a).

4.      This Court has jurisdiction over the person of Defendant because, pursuant to Section 18 of the Motor Carrier Transportation Contract (the "Agreement") entered into by the Parties, Defendant agreed to be subject to personal jurisdiction in this Court.  A true and accurate copy of the Agreement is not attached to the Complaint as the Agreement contains a confidentiality clause prohibiting the Parties from disclosing the terms and conditions of the Agreement and, in any event, Defendant has a copy of the Agreement.

5.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b)(2-3) and 49 U.S.C. 14706(d)(1) because this is the district where a substantial part of the events giving rise to the claim occurred where Defendant is subject to the Court's personal jurisdiction with respect to the action.  Moreover, venue is proper in this district because the Parties agreed to be subject to venue in this district pursuant to Section 18 of the Agreement.

## FACTS AND BACKGROUND

6.      On or about May 14, 2019, DSC Logistics and Defendant entered into a Motor Carrier Transportation Contract (the "Agreement") whereby Defendant agreed, among other

things, to transport cargo entrusted to it by DSC Logistics' and its customers in accordance with the terms of the Agreement and in exchange for payment.

7.      In May of 2020, DSC Logistics' customer, B&G Foods Inc. ("B&G"), retained DSC Logistics to broker the transportation of a valuable load consisting of frozen food (the "Cargo").

8.      In turn, DSC Logistics engaged Defendant to transport B&G's Cargo by refrigerated truck from a cold storage facility operated by Lineage Logistics ("Lineage") in Moss Landing, California to another cold storage facility operated by Lineage in Fort Worth, Texas pursuant to the Agreement.

9.      Defendant's driver picked up the Cargo in good condition on or about May 5, 2020.  Defendant acknowledged, via signature of its driver, receipt of the Cargo in good order and condition on the Bill of Lading ("BOL").  A true and accurate copy of the BOL is attached hereto as **EXHIBIT A**.

10.     The BOL memorialized a requirement that the temperature of the Cargo be maintained at zero degrees Fahrenheit (0º F).  However, Defendant failed to maintain the required 0º F temperature.

11.     Furthermore, Lineage has repeatedly confirmed that it does not load a refrigerated trailer until the trailer is pre-cooled to -10 degrees Fahrenheit (-10º F).  Indeed, the sign-out sheet that the driver executed at origin before leaving the Lineage facility expressly states that the trailer temperature was to be set to -10º F.  A true and accurate copy of the sign-out sheet is attached hereto as **EXHIBIT B**.

12.     The Cargo arrived in Fort Worth, Texas at a non-conforming, high temperature rendering the Cargo wholly damaged.

3

13. Lineage confirmed that the Cargo was delivered in a damaged condition via (a) the refrigeration unit's temperature recording (which reflected that the unit was turned off completely during transport), (b) the Lineage Carrier Gate Pass at destination (which also indicated that the refrigeration unit was turned off), and (c) a temperature probe used upon arrival (which revealed the Cargo temperature to be 30.8°F).

14. As a result of the damage to the Cargo and other quality and branding concerns, B&G had no choice but to destroy the Cargo.

15. Pursuant to Section 7.1 of the Agreement, Defendant agreed to assume the liability as a motor common carrier for loss of, damage to, or delay of goods, including such damage to the Cargo.

16. Under Section 4 of the Agreement, Defendant also expressly agreed to comply with all applicable laws and regulations and with DSC Logistics' or the shipper's written instructions regarding sanitary food transportation when transporting food shipments.

17. Under Appendix G of the Agreement, Defendant agreed to assume liability for breaching any contractual or statutory requirement regarding the sanitary transportation of food. More specifically, at Section 2 of Appendix G, Defendant accepted responsibility for the "sanitary conditions of Food Cargos during their transportation and complying with DSC Logistics' and/or the shipper's written instructions, including without limitation any temperature set point or temperature range, as provided to the Carrier by DSC Logistics or the shipper in physical or electronic form."

18. Under Section 9 of Appendix G to the Agreement, Defendant agreed that any Cargo transported under conditions that are not in compliance with the written instructions or requirements set forth in the shipping documents, including any seal, temperature, quality control

standards and delivery date requirements, would be considered "adulterated" within the meaning of the Federal Food, Drug and Cosmetic Act (21 U.S.C. §§ 342(a)(i)(4), 342(i)).

19.     Pursuant to Appendix G of the Agreement, Defendant also agreed that "DSC Logistics is not responsible for and shall in no way be held liable for [National Carrier's] failure to adhere to its respective obligations under the laws and regulations governing the safe and sanitary transport of food for human consumption, including the Food Safety Laws referenced above."

20.     Pursuant to Section 9 of the Agreement, Defendant further agreed to indemnify DSC Logistics for claims resulting from "loss of or damage to property."

21.     On or about May 29, 2020, B&G made a formal claim to DSC Logistics for damage to the Cargo in the amount of Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11).

22.     On June 12, 2020, DSC Logistics presented its claim to Defendant for damages in the amount of Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11).

23.     To date, Defendant has not paid any portion of the claim.

24.     Therefore, DSC Logistics paid B&G in satisfaction of B&G's claim against Defendant.

25.     In exchange for DSC Logistics' payment, B&G assigned to DSC Logistics its claim against Defendant.

26.     As a result of Defendant's actions, DSC Logistics has been damaged in the principal amount of Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11) in connection with the claim related to the Cargo.  Consequently, DSC

Logistics is entitled to recover from Defendant the amount of Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11), plus attorneys' fees, pre- and post-judgment interest, and costs.

## COUNT I – LIABILITY UNDER THE CARMACK AMENDMENT

27.     DSC Logistics incorporates by reference each and every allegation set forth above.

28.     Defendant took possession of the Cargo in good order and condition in Moss Landing, California.

29.     Defendant acknowledged receipt of the Cargo in good order and condition on the BOL.

30.     However, Defendant failed to deliver the Cargo to destination at Fort Worth, Texas in good order and condition.

31.     Consequently, at destination, the damaged Cargo was rejected after it was determined that the Cargo was outside of the specified and agreed upon temperature range.

32.     This was confirmed via (a) the refrigeration unit's temperature recording (which reflected that the unit was turned off completely during transport), (b) the Lineage Carrier Gate Pass at destination (which also indicated that the refrigeration unit was turned off), and (c) a temperature probe used upon arrival (which revealed the Cargo temperature to be 30.8°F).

33.     As a result of the damage to the Cargo and other quality and branding concerns, B&G had no choice but to destroy the Cargo.

34.     Due to Defendant's receipt of the Cargo in good order and condition and its failure to deliver the Cargo in good condition, without the fault of DSC Logistics, and by virtue of B&G's assignment to DSC Logistics of B&G's claim against Defendant, DSC Logistics has

incurred damages in the principal amount of no less than Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11), plus attorneys' fees, pre- and post-judgment interest, and costs.

35.     Under the Carmack Amendment, 49 U.S.C. § 14706, Defendant is liable to DSC Logistics, and DSC Logistics is entitled to recover from Defendant an amount to be proven at trial, the sum of which is at least Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11), plus pre- and post-judgment interest, and costs.

**COUNT II – BREACH OF CONTRACT**

36.     DSC Logistics incorporates by reference each and every allegation set forth above.

37.     DSC Logistics entered into a valid and enforceable contract with Defendant, whereby Defendant agreed, among other things: (1) to be liable to DSC Logistics for the loss, damage, or delay of goods; (2) to comply with all applicable laws and regulations and with DSC Logistics' or the shipper's written instructions regarding sanitary food transportation when transporting food shipments; (3) to be liable to DSC Logistics for breaching any contractual or statutory requirement regarding the sanitary transportation of food; (4) that "DSC Logistics is not responsible for and shall in no way be held liable to [National Carrier] for [National Carrier's] failure to adhere to its respective obligations under the laws and regulations governing the safe and sanitary transport of food for human consumption, including the Food Safety Laws referenced above"; and (5) to indemnify DSC Logistics for claims resulting from "loss of or damage to property."

38.     DSC Logistics has performed all of its obligations under the Agreement, and all conditions precedent to recovery have occurred.

39.     Defendant has breached the Agreement by failing to: (1) assume the liability of a motor common carrier for loss, damage, or delay to the Cargo; (2) comply with DSC Logistics' or the shipper's written instructions regarding sanitary food transportation when transporting the Cargo; (3) pay DSC Logistics for breaching contractual or statutory requirements regarding the sanitary transportation of food; (4) accept responsibility, thereby imputing responsibly to DSC Logistics, for Defendant's failure to adhere to its obligations under the laws and regulations governing the safe and sanitary transport of food for human consumption; and (5) indemnify DSC Logistics for claims resulting from "loss of or damage to property," including B&G's claim to DSC Logistics.

40.     Defendant's breach of the Agreement has caused injury to DSC Logistics.

41.     As a result, DSC Logistics is entitled to recover from Defendant the sum of at least Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11), plus attorneys' fees, pre- and post-judgment interest, and costs.

## **RELIEF REQUESTED**

WHEREFORE, DSC Logistics, based on the foregoing factual allegations and applicable legal theories, whether stated herein above or determined at a later time based on the evidence presented at trial, respectfully requests a judgment providing the following:

1.     Judgment in DSC Logistics' favor on all claims;

2.     Judgment in DSC Logistics' favor and against Defendant on its First Count in the amount of Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11), plus pre- and post-judgment interest, and costs;

3. Judgment in DSC Logistics' favor and against Defendant on its Second Count in the amount of Thirty-Six Thousand Seven Hundred Seventy-Nine Dollars and Eleven Cents ($36,779.11), plus attorneys' fees, pre- and post-judgment interest, and costs;

4. All other relief in law or equity to which DSC Logistics is entitled.

Respectfully submitted,

_s/ Ashleigh J. Morpeau_
ASHLEIGH J. MORPEAU
**BENESCH, FRIEDLANDER, COPLAN &
 ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192
Email: amorpeau@beneschlaw.com

MARC S. BLUBAUGH (pro hac vice forthcoming)
ABIGAIL R. RIFFEE (pro hac vice forthcoming)
**BENESCH, FRIEDLANDER, COPLAN &
 ARONOFF LLP**
41 South High Street, Suite 2600
Columbus, Ohio 43215-6164
Telephone: 614.223.9300
Facsimile: 614.223.9330
Email: mblubaugh@beneschlaw.com
 ariffee@beneschlaw.com

*Attorneys for Plaintiff CJ Logistics America, LLC
d/b/a DSC Logistics*

## **REQUEST FOR TRIAL BY JURY**

Plaintiff CJ Logistics, LLC d/b/a DSC Logistics respectfully requests that all matters set

forth in this Complaint and Jury Demand so triable be tried by and before a jury.

*s/ Ashleigh J. Morpeau*
*One of the Attorneys for Plaintiff CJ Logistics*
*America, LLC d/b/a DSC Logistics*
